## Hickey v. Hickey

*Benjamin H. Renshaw, Jr.*, for libellant.
*Edward G. Taulane, Jr.*, for respondent.

GORDON, JR., P. J., January 2, 1939.—This case is before us on exceptions to the master's report recommending a divorce on the grounds of cruelty and indignities to the person. The libel was filed on August 27, 1937, and on September 1st of the same year, before either it or the subpœna was served, libellant presented a petition under the Act of June 10, 1901, P. L. 553, and The Divorce Law of May 2, 1929, P. L. 1237, averring that his wife is suffering from dementia præcox, having been confined in a hospital for the insane since 1935, and praying for the appointment of a committee ad litem for her. Edward G.

Taulane, Jr., Esq., was duly appointed committee for respondent, and thereafter all process in the case has been served upon him. There has been no personal service on the wife of the libel, subpœna, or of any rule to take depositions, and, because of her insanity, she is unable to appear and defend the action. The case proceeded in the usual course, during which the testimony of libellant was taken, and the master's report recommending a divorce is now before us on exceptions filed by respondent's committee.

From all the evidence presented, including that of libellant himself, there is sufficient to support the master's recommendation. If, however, libellant's testimony must be disregarded because he is not, in the circumstances, a competent witness against his wife, the remaining evidence is clearly insufficient to justify granting the divorce. The question presented for our determination, therefore, is whether, in an action for divorce, a husband libellant is a competent witness against his lunatic wife, who has not and cannot personally defend against the action, and upon whom no process has been served, either personally or by publication, service having been made only upon her committee ad litem appointed on the petition of her husband admitting and averring her lunacy.

The competency of witnesses generally is governed by the Evidence Act of May 23, 1887, P. L. 158, which, in section 5 (e) provides, inter alia:

"Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic . . . shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy".

Whether the fact that respondent has not been formally adjudged a lunatic by inquisition under the Act of June 13, 1836, P. L. 589, would render this section inapplicable to the present case is immaterial in our judgment, first,

because libellant procured the appointment of the committee upon his own averment and admission of his wife's lunacy; second, because our action in appointing the committee was founded upon a determination of her mental condition, since The Divorce Law of 1929, supra, requires us in making the appointment to be satisfied of the necessity for a committee by proof of "such circumstances as may be sufficient to satisfy" our "mind as to the" fact of lunacy; and, third, because section 1 of the Act of 1901, supra, which authorizes the appointment of committees ad litem for lunatic parties to an action, provides that service on the committee "shall be as effectual as though made on a committee regularly appointed under existing laws." These three circumstances, and especially the last, incontrovertibly establish the fact of her lunacy, and, for reasons that will be discussed hereafter, are in our opinion equivalent to an adjudication thereof under the Act of 1836. Section 5(e) of the Act of 1887, supra, is referred to now, however, merely to indicate the general policy of the law to exclude a party to a transaction from testifying, if his adversary is dead or a lunatic. The injustice of permitting him to do so in such circumstances is so manifest that the intention of the legislature to depart from a rule so essentially fair and salutary must be clearly and inescapably indicated before we would be inclined to give that effect to subsequent legislation fairly admitting of an interpretation that would not abrogate the general rule in favor of a particular class of litigant.

Section 5(c) of the Act of 1887 deals immediately with the competency of husband and wife as witnesses against each other, and provides:

"Nor shall husband and wife be competent or permitted to testify against each other, except in those proceedings for divorce in which personal service of the subpœna or of a rule to take depositions has been made upon the opposite party, or in which the opposite party appears and defends, in which case either may testify fully

against the other, and except also that in any proceeding for divorce either party may be called merely to prove the fact of marriage."

In this section of the act the policy of the law is disclosed to preserve and foster marriage and the family relationship by declaring husband and wife incompetent to testify against each other, except in certain specified instances, among which are actions for divorce where respondent actually appears and defends or has been personally served with process in it.

This remained the law until the passage of the Acts of June 8, 1911, P. L. 720, and April 21, 1915, P. L. 154, which gradually extended the competency of husbands and wives in divorce actions. The Act of 1911, supra, permitted a libellant to prove the fact of desertion in actions on that ground if service was had only by publication. The later Act of 1915, supra, further enlarged libellant's competency by extending it to all actions for divorce where service is secured only by publication. This is the condition of the law today, for section 50 of The Divorce Law of 1929, following the language of the Act of 1915, provides that:

"In all proceedings for divorce, the libellant shall be fully competent to prove all the facts, though the respondent may not have been personally served with a libel, subpœna or rule to take depositions, and may not be residing within the Commonwealth, but has been served only by publication."

In this gradual extension of a husband and wife's competency to testify against each other, it is apparent that the legislature pursued a very definite policy, which has carefully avoided lowering the general bar erected by section 5 (c) of the Act of 1887 against permitting one party to an occurrence in issue to speak when the mouth of his adversary is closed by death or insanity. The first act, that of 1887, removed a husband's and wife's mutual incompetency only in cases in which respondent actually defended the action, or through personal service of

process in the case, had full knowledge of the charge and an opportunity to answer it. The Act of 1911, the next to deal with the subject, extended their competency by making service by publication the equivalent of personal service in suits for divorce on the ground of desertion and permitting libellant to testify to all the facts in such cases. And finally, the Act of 1915 made them competent for all purposes and in all actions for divorce notwithstanding the respondent has been served only by publication. Each of these successive extensions of their competency as witnesses against each other deals only with those respondents who receive notice of the action in one form or another, and who presumptively can answer their spouse's charges if they so desire. Nowhere is there discernible in these acts the legislative intent to include in their operation cases in which notice of the suit would be useless because of the inability of respondent to take advantage of the opportunity to defend which notice is intended to afford. Nothing in the language used indicates such a result to have been contemplated by the legislature, and to hold that it intended to work so manifest an injustice would be to read into the law an unexpressed and questionable purpose, and to do violence to a conception of fairness that is deeply rooted in conscience and good morals.

No reported decision of our appellate courts controlling this question has been called to our attention. The cases principally relied on by libellant are lower court decisions: James v. James, 2 D. & C. 123, and Wetzel v. Wetzel, 3 D. & C. 804; and, in our opinion, are not in point. In James v. James, although the wife respondent appears to have been assumed to be insane for the purposes of the decision, the court held libellant competent to testify against her, for two reasons: First, because she appeared and defended against the action; and, second, because, since she had not been adjudicated insane under the Act of 1836, the court held that the appointment of a guardian of her estate under the Act of May 28, 1907,

P. L. 292, was not such an adjudication of lunacy as would render libellant incompetent as a witness against her under section 5(e) of the Act of 1887. The first of these grounds, that the wife had appeared and defended the action, was sufficient in itself to justify the decision, and hence the second ground was not necessary to support it. While we agree, as a general proposition, that the appointment of a guardian of the estate is not an adjudication of lunacy, and would not alone prevent a libellant from testifying under section 5(e) of the Act of 1887, we are not prepared to concede, if the court intended to so hold, that an adjudication of lunacy is an indispensable prerequisite to bring section 5(e) into operation. In ordinary circumstances, a specific adjudication of lunacy is necessary to bar a party from testifying against his adversary, for that is the usual method of establishing the fact which would work disqualification. Yet when, as here, the fact is beyond dispute, so much so that it is admitted of record by the party offering himself as a witness, it would be a harsh rule of statutory interpretation indeed that would withhold the protection of the statute from him for whose benefit it was enacted, and who can neither protect himself, nor initiate proceedings to have himself adjudicated the lunatic that he admittedly is. In such circumstances, we think that the acknowledgment of his wife's lunacy by libellant himself is the equivalent, so far as he is concerned, of an adjudication of the fact.

The case of Wetzel v. Wetzel, supra, is even less pertinent to this question than is the James case. The Wetzel case was before the court on rules for alimony and for a jury trial. It is not clear from the opinion whether process had been served upon respondent personally. She was represented by counsel, however, and, after a motion by relatives for leave to intervene, a guardian of her estate was appointed under the Act of 1907. It is true that, in disposing of the rules before it, the court did indicate in its opinion that libellant would be a competent witness

in the case because the appointment of a guardian of her estate was not an adjudication of lunacy. His competency, however, was not then before the court for determination, and its declaration upon that subject was clearly obiter dicta, and hence that case is not an authoritive decision of the question before us.

Disregarding the testimony of libellant for the reasons stated, the evidence is insufficient to justify the granting of the divorce prayed for, and, accordingly, the master's report is disapproved and the libel dismissed.